# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____/

**DANIEL LUPU,**
**LINDA LUPU,**
    *individuals,*
    *Plaintiffs,*

                                      Case Number: 1: 25-cv-232
                                        Hon.:_____

**-vs-**

                                        **VERIFIED COMPLAINT**

**THE CITY OF OVID,**                      **DEMAND FOR JURY TRIAL**
    *A Michigan Municipal Corporation,*
**LISA ROUSSEAU,**
    *In Her Official Capacity as Police*
    *Chief, and in her personal capacity,*
    *Defendants.*

_____/

## VERIFIED COMPLAINT

Plaintiff DANIEL LUPU ("Plaintiff"), alleges the following upon information and belief based upon personal knowledge:

### NATURE OF THE CASE

1. Plaintiff brings this action seeking damages for the violation of his civil rights pursuant to 42 U.S.C 1983 by City of Ovid Chief of Police Lisa Rousseau, who has engaged in a persistent pattern of knowingly, willfully, and/or intentionally targeting Plaintiff with sham law enforcement actions flagrantly against his civil rights, with the knowledge and consent of the City of Ovid.

2. Plaintiff also asserts a common-law defamation claim against Lisa Rousseau, in her personal capacity as well as her official capacity.

### JURISDICTION AND VENUE

-1-

3. Jurisdiction is proper under 28 U.S.C. § 1331.  Plaintiff seeks damages pursuant to 42 U.S.C. 1983, rendering original jurisdiction proper as a federal question.

4. This Court also has supplemental jurisdiction under 28 U.S.C § 1367 for Plaintiff's defamation claim against Lisa Rousseau.

5. All parties reside in Clinton County, Michigan, rendering venue appropriate in the Western District of Michigan, Southern Division.

**<u>FACTS COMMON TO ALL CLAIMS</u>**

6. Police Chief Lisa Rousseau ("Rousseau") is the chief of police for the City of Ovid, a Michigan municipal corporation.

7. For reasons unknown to Plaintiff Daniel Lupu and his life, Linda Lupu (the "Lupus"), Rousseau has loudly and publicly engaged in a campaign against their reputation and character by accusing them of various crimes, without ever bringing formal charges against them.

8. Daniel Lupu is a decorated fire fighter prior to a disabling injury, a lifelong resident and former President of the Village of Ovid, while his wife Linda was formerly the township clerk for the Township of Ovid.

9. The Lupus are well known and respected citizens, with no criminal history whatsoever.

10. Defendant Rousseau, using city resources and upon information and belief with the explicit knowledge of then-councilwoman now-mayor Mary Perrien, engaged in a pattern of behavior unfairly targeting the Lupus by accusing them of felony crimes and local ordinance violations.

11. The City of Ovid was repeatedly notified of these actions, yet no action was taken to stop Rousseau's activities.

12. The City of Ovid implicitly and explicitly encouraged, allowed, or otherwise permitted Rousseau's wrongful crusade against the Lupus to continue unabated for years.

13. The City of Ovid failed to supervise, discipline, or otherwise address the repeated misconduct of Rousseau, creating a custom, policy, or practice of allowing constitutional violations to occur.

## CAUSES OF ACTION

### *COUNT I – Violation of 42 USC 1983*

### *Unreasonable Search of the Lupu Home*

14. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth within.

15. On July 23, 2023, the Lupus' home located at 343 W. Front Street, City of Ovid, Michigan, caught fire during a thunderstorm.  Emergency response promptly arrived, but were unable to save the interior of the structure.  No persons were injured during the fire.

16. Captain Eric Brown of the Ovid-Middlebury Fire Department determined that the likely cause of the fire was the air conditioning unit, which suffered a power surge due to electricity instability during the thunderstorm.  Subsequently, the roof caught fire.

17.  While off duty but acting clearly under color of law, Rousseau took it upon herself to respond despite the fact her deputy Jaclyn Allen was already dispatched to the scene.

-3-

18. Allen allegedly took statements from Brown and the Lupus.  Lupu stated he was in the neighboring town of Owosso at the time the fire started, while his wife was in the home recovering from a recent surgery.

19.  With only these facts available, Rousseau began an investigation for suspected arson.

20. Rousseau was told by Captain Eric Brown that the fire started in the air conditioner, but she was dissatisfied with that answer.  She then asked the Ovid-Middlebury Fire Chief Jerry Stevens about investigating the fire, and Stevens again told her this was not the result of arson.

21. Of her own volition, upon information and belief Rousseau contacted the Lupus' home insurance company Auto-Owners to wrongfully report the fire as arson.

22. On August 1, 2023, Rousseau unlawfully entered the property without a warrant explicitly to conduct an investigation into criminal activity. It is well-established that warrantless entry onto private property is unlawful unless an exigent circumstance or valid exception applies (see *Katz v. United States*, 389 U.S. 347 (1967)).

23.  Rousseau returned to the property the next day, still without warrant or warrant exception.

24. In both cases, and both incidents, Rousseau violated Plaintiff's 4th Amendment Rights to be free from Unreasonable Searches and Seizures.  She did so despite the clearly established law that such a search requires a warrant, and she engaged in this pattern of behavior to harass, malign, or otherwise damage the reputation of the Plaintiff.

25. Rousseau went so far as to place police tape over the property, despite the fact the property was already boarded up after the fire, to falsely imply to all observers that the home was under police investigation.

26. Subsequently, on August 14, 2023, Captain Eric Brown[1] and Daniel Lupu confronted the City Council regarding Rousseau's harassment.

27. During that hearing, then councilwoman now mayor Mary Perrien informed Brown and Lupu that this matter was under investigation and proclaimed that Rousseau did nothing wrong, establishing clearly that the City of Ovid had knowledge of and acquiesced to Rousseau's sham investigation.

28. Plaintiff has been damaged by this unlawful intrusion into his property by the City of Ovid's chief of police, acting under color of law, causing him severe anxiety, stress, and emotional damage; needlessly delayed the necessary repair work for his home for a sham investigation, denying him the quiet enjoyment of his property; humiliated the Plaintiff by flagging his property as a crime scene for all the community to see.  These damages resulted in discrete and concrete remediable harms.

### COUNT II – Violation of 42 USC 1983

### Due Process Violation

29. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth within.

30. Plaintiff has a statutory property interest in the payout from his Homeowner's insurance claim.

---

[1] Eric Brown is also a City of Ovid Councilman

31. As part of Rousseau's sham investigation into the fire at Plaintiff's home, she contacted Auto-Owners Insurance Company's Fraud Division to report her untruthful suspicions about the fire.

32. In August, 2023, Rousseau reported to the fraud investigators that she did not believe the fire was an accident, encouraging Auto-Owners to perform their own investigation.

33. Parallel to this, Rousseau's own investigation went nowhere, as she was repeatedly told that there was no arson.

34. Eventually, the matter was handed over to the Michigan State Police Special Investigations Unit, specifically MSP Trooper Salcido.  Salcido closed the investigation shortly after receiving the request, finding no evidence of arson.

35. Despite that finding, Rousseau continued to falsely inform Auto-Owners that there was an active investigation against Plaintiff.

36. It was not until March of 2024 that Auto-Owners, upon information and belief, confirmed with Salcido that there was no active investigation.  Subsequently, they approved Plaintiff's insurance claim.

37. Rousseau's actions denied Lupu the substantive due process rights of contesting the sham arson allegation against him, and Rousseau's actions to explicitly falsely inform Auto-Owners, leaning on her credentials as the chief law enforcement officer for Ovid, that Lupu was under investigation shocks the conscience.

38. Without due process, Rousseau, acting with the full knowledge of the City of Ovid, willfully and deliberately engaged in a course of action that deprived Plaintiff of a valuable property interest.

### COUNT III – Violation of 42 USC 1983

### *First Amendment Retaliation; Improper Use of City Resources*

39. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth within.

40. As part of the vigorous 2024 election cycle, Plaintiff decided to run for mayor of Ovid.

41. Plaintiff made plain in his campaign that he had concerns about councilwoman Mary Perrien's run for office against incumbent mayor William Lasher, largely because of Perrien's close ties to Rousseau.

42. During the election season, Plaintiff was freely and openly campaigning in the City of Ovid and surrounding areas, including during community events.

43. Rousseau attended one of these events, a parade for Ovid-Elsie High School's Homecoming, while wearing her city-issued bodyworn camera.

44. Upon information and belief, Rousseau took from her bodyworn camera footage of the event a still image showing Plaintiff in a firetruck, next to an electioneering sign.

45. Upon further information and belief, Rousseau then took that image and posted it "anonymously" to the Ovid-Elsie community Facebook Group, taking issue with the use of campaign materials in the fire truck.

46. This was plainly done to influence the outcome of the election, as Rousseau feared for her position as police chief should Plaintiff win the election.

47. Rousseau's use of resources provided to her by the city for her official law enforcement role to further a political agenda for her own betterment is a brazenly clear violation of the First Amendment.

48. Harkening back to the days of highly politicized police forces, Rousseau's actions have a chilling effect on future candidates for political office who adopt positions that threaten her continued ability to engage in unlawful conduct without consequences.

49. Rousseau also publicized a demand letter on the Ovid-Elsie Facebook group from an attorney she retained to threaten the Lupus with a defamation lawsuit, publicly, forcing Plaintiff to divert his campaign resources to countering her claims of slander.

50. This chilled Lupu's interest in participating in the election, especially due to the harassment from others in the community he received.

51. These actions have violated Plaintiff's First and Fourteenth amendment rights.

### *COUNT IV* – Common Law Defamation

52. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth within.

53. Since the fire on July 23, 2023, Rousseau has made repeated false statements claiming Plaintiff is an arsonist and insurance fraudster.  Her actions have caused immense harm to Plaintiff's reputation.

54. At the time of the fire, Lupu was a private citizen and remained so until he opted to run for office.  For that period of time, Rousseau repeatedly defamed him by slandering his name to others in the community, writing an official police report rife with lies and falsehoods, and falsely relayed to Auto-Owners Insurance that Lupu was under investigation both by herself and the Michigan State Police for arson.

55. Rousseau was informed by local fire officials twice (Captain Eric Brown and Chief Jerry Stevens) that there was no arson; she was rebuked by the county Undersheriff that there was no evidence of arson; and the Michigan State Police found no arson when they closed the investigation.  Rousseau's continued insistence that Lupu burned his own house down was made with reckless disregard for the truth.

56. These statements were clearly defamatory falsehoods, made to third parties with the intent and effect of damaging Lupu's reputation, contributing unfairly to his loss in the mayoral election.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A.  Issue a judgment finding that the Defendants violated Plaintiff's civil rights;

B.  Issue a judgment that Defendant Rousseau defamed Plaintiff;

C.  Award all monetary damages, including attorney fees and costs, exemplary damages, punitive damages, and any other damages Plaintiff is entitled to, not less than $2,000,000 (Two-Million dollars);

D.  Any other relief that justice so demands.

Respectfully submitted,

/s/Jack W. Rucker
The Law Office of Reid Felsing, PLC
428 W. Lenawee Street
Lansing, MI 48933